**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

---

AIDS HEALTHCARE FOUNDATION, INC.,

        Plaintiff,

    vs.

JACK CARREL; MAURICIO FERRER;
SHAWN LOFTIS; THEODORE J.
LEOPOLD, ESQ.; COHEN MILLSTEIN
SELLERS & TOLL, PLLC; SALPETER
GITKIN, LLP; AND THE KAISER LAW
FIRM, PLLC,

        Defendants.

CASE NO. 15-cv-21546-KMW

---

**PLAINTIFF AIDS HEALTHCARE FOUNDATION, INC.'S MOTION FOR EXPEDITED DISCOVERY TO DETERMINE THE EXTENT OF DEFENDANTS' UNAUTHORIZED POSSESSION AND USE OF CONFIDENTIAL DOCUMENTS AND PATIENT HEALTH INFORMATION**

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that Defendant AIDS Healthcare Foundation, Inc. ("AHF"), by and through its undersigned counsel, hereby submits this Motion for Expedited Discovery to Determine the Extent of Defendants' Unauthorized Possession and Use of Confidential Documents and Patient Health Information.

AHF seeks through this Motion an Order granting expedited discovery concerning Defendants' taking, use and dissemination of highly confidential, statutorily protected AHF patient healthcare information.  Specifically, AHF requests expedited depositions of Defendants Jack Carrel, Mauricio Ferrer and Shawn Loftis limited to topics such as the scope and identification of all confidential information taken from AHF, how it was obtained, where and to whom it has been disseminated, and current safeguards to protect against further disclosure. AHF also seeks expedited written discovery limited to these same topics.  Copies of the deposition notices for Defendants Carrel, Ferrer and Loftis and requests for production have been filed concurrently with the Motion as Attachments A and B.

Time is of the essence, in light of the highly-sensitive nature of the documents and information currently in the hands of Defendants and third parties unknown to AHF - but likely known or identifiable by Defendants - who accessed or received this information from Defendants.  However, because Defendants have largely rebuffed AHF's repeated efforts to resolve this issue informally, and refuse to identify what confidential documents and information they possess or when and by what means it has been disseminated (among other topics), AHF respectfully requests that the Court issue an Order permitting limited expedited discovery so that AHF may explore these topics and thereby assess what remedial measures may be taken to

prevent further harm to AHF and its patients.  AHF further requests that the Court grant a hearing and permit oral argument on this Motion.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, all other pleadings and papers on file in this action, and such other evidence and argument as the Court may receive

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................1

II.     FACTS AND BACKGROUND .....................................................................2

      **A.**    The Former Employees' Acknowledgement of AHF Policies and Procedures Concerning Confidential Patient Information ......................................2

      **B.**    The Misappropriation and Publication of AHF Confidential Information .............5

      **C.**    AHF's Prompt and Repeated Efforts To Stop Defendants' Unauthorized Possession and Disclosure of AHF's Confidential Documents and Patient Information .........................................................................7

      **D.**    Procedural Posture .....................................................................8

III.    ARGUMENT ...........................................................................8

      **A.**    Expedited Discovery is Necessary to Assess The Extent of the Former Employees' Malfeasance, Identify Possible Remedial Measures to Mitigate Future Harm, and Determine Appropriate Remedies and Sanctions ................................................................................10

            1.    Good Cause Exists for the Court to Grant Expedited Discovery..............10

            2.    Information Developed Through Expedited Discovery Is Necessary to Determine What Relief AHF is Entitled to and What Sanctions are Appropriate ........................................................13

IV.    CONCLUSION.........................................................................15

V.     REQUEST FOR HEARING..........................................................15

VI.    CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3) .......................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Appel v. Fischbach Corp.*,
    1998 WL 470497 (E.D.N.Y. Aug. 10, 1998).................................................................19, 17

*Burns v. City of Alexander City, et al.*,
    2014 WL 2440981 (M.D. Ala. May 30, 2014) ...................................................................16

*Cabotage v. Ohio Hospital for Psychiatry, LLC,*
    2012 WL 3064116 (S.D. Ohio Jul. 27, 2012)...............................................................17, 19

*Dell Inc. v. Belgiumdomains, LLC*,
    2007 WL 6862341 (S.D. Fla. Nov. 21, 2007).....................................................................15

*Hodgson v. Texaco Inc.*,
    440 F.2d 662 (5th Cir. 1971) .............................................................................................17

*In re Katrina Canal Breaches Consolidated Litig.*,
    2008 WL 4401970 (E.D. La. Sept. 22, 2008) .....................................................................18

*JDS Uniphase Corp. v. Jennings*,
    473 F. Supp. 2d 697 (E.D. Va. 2007) ............................................................................13, 17

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002)........................................................................................16

*Smith v. Armour Pharm. Co.*,
    838 F. Supp. 1573 (S.D. Fla. 1993) ...................................................................................19

*Tracfone Wireless, Inc., v. Adams*,
    304 F.R.D. 672 (S.D. Fla. 2015)........................................................................................16

*United States ex rel. John Rector, et al., v. Bon Secours Richmond Health Corp., et al.*,
    2014 WL 66714 (E.D. Va. Jan. 6, 2014) ............................................................................18

*Vargas v. Peltz*,
    901 F. Supp. 1572 (S.D. Fla. 1995) ...............................................................................13, 18

*Zahodnick v. IBM Corp.*,
    135 F.3d 911 (4th Cir. 1997) .........................................................................................19, 20

**STATE CASES**

*Conn v. Sup. Ct.*,
  196 Cal. App. 3d 774 (1987) ..............................................................................17

*Pillsbury, Madison & Sutro v. Schectman*,
  55 Cal. App. 4th 1279 (Cal. Ct. App. 1997) .......................................................19

**FEDERAL STATUTES**

42 U.S.C. § 1320d-6 ...................................................................................12, 14, 20

Federal False Claims Act [31 U.S.C. §§ 3729 et seq.] ..............................................6

Health Insurance Portability and Accountability Act of 1996 ("HIPAA") ......................... passim

**STATE STATUTES**

Fla. Stat. § 381.004 ....................................................................................................20

Fla. Stat. § 381.004(5) ...............................................................................................14

Florida False Claims Act [§§ 68.081 et seq., Fla. Stat.] ...........................................6

**RULES**

Fed. R. Civ. Procedure § 16(b) .................................................................................13

Local Rule 7.1(a)(3) ..................................................................................................21

Local Rule 7.1(b) .......................................................................................................21

Fed. R. Civ. Procedure Rule 26(f) ............................................................................16

**REGULATIONS**

45 C.F.R. § 164.530(f) ...............................................................................................12

## I.        INTRODUCTION

AHF is a non-profit organization that provides testing, medicine, healthcare and other services to HIV/AIDS patients in 36 countries.  AHF has served more than 400,000 people with HIV/AIDS, and is the largest provider of HIV/AIDS medical care in the United States.  AHF is a "covered entity" for purposes of The Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Defendants Jack Carrel, Mauricio Ferrer and Shawn Loftis (the "Former Employees") are all former Directors or Managers of AHF and are the relators in a separate *qui tam* action against AHF alleging violations of the Federal False Claims Act [31 U.S.C. §§ 3729 et seq.] and Florida False Claims Act [§§ 68.081 et seq., Fla. Stat.].[1]

In violation of federal and state laws (as well as the terms of their confidentiality and other agreements with AHF), the Former Employees resorted to self-help discovery tactics to obtain copies of AHF's confidential documents containing the personal information and HIV positive status of hundreds of AHF's patients.  Defendants thereafter drummed up a media storm to publicize their *qui tam* action against AHF and provided members of the media and the public copies of or access to these obviously confidential documents containing highly-sensitive patient health information.  It was only after Defendants filed their First Amended Complaint for Violations of the Federal False Claims and Florida False Claims Act (the "Amended *Qui Tam* Complaint") which attached and incorporated AHF's confidential documents, that AHF learned of the Former Employees' malfeasance.

As a covered entity under HIPAA, AHF has a legal obligation to do all that it reasonably can to mitigate the harm to its patients caused by Defendants' actions – to say nothing of the moral obligation AHF feels to protect the privacy rights and dignity of its patients.  Given the

---

[1]        Both the United States and Florida declined to intervene in the *qui tam* action.

highly-sensitive nature of the documents and information currently in the hands of Defendants and third parties unknown to AHF (but likely known or identifiable by Defendants), time is clearly of the essence.  Yet, AHF cannot fulfill its statutory duties unless and until it knows exactly what was taken and what was done with it.  AHF has therefore repeatedly asked Defendants to identify and return all confidential documents and information they wrongfully possess and to disclose how it was obtained, where and to whom it has been disseminated, and any current safeguards to protect against further unauthorized disclosure.  These efforts have been largely met with silence.  Accordingly, AHF now appeals to the Court to issue an order granting AHF limited expedited discovery on these issues.

## II.    FACTS AND BACKGROUND

### A.    The Former Employees' Acknowledgement of AHF Policies and Procedures Concerning Confidential Patient Information

Defendant Carrel formerly held the position of Director of Public Health, Southern Bureau of AHF from August 9, 2012 and August 9, 2013.  In his resume, he stated that he had "[o]ver 28 years experience in reproductive health education including HIV . . ." and listed significant experience in HIV testing and program development.  (L. Boudreau Decl., Ex.1.) While employed by AHF, Carrel signed a number of agreements containing confidentiality provisions and explaining the protected nature of patient health information, and completed related training (collectively, the "Carrel Employment Agreements"), including:

(i) Acceptance of Offer for employment, which informed Carrel that "[t]o perform the job successfully," he should "[m]aintain [c]onfidentiality" and "[w]ork with integrity and ethically."  (L. Boudreau Decl., Ex.2.)

(ii) HIPAA training.  (L. Boudreau Decl., Ex.3.)

2

(iii) AHF Confidentiality Policy which states that, as an employee of AHF, Carrel "shall maintain the confidentiality of all information that may be obtained or used in the provision of services, including, but not limited to, county record, patient records, and billings," and that he "shall not release the name of any patient, or disclose information or records about any patient receiving services to any party, except to authorized representatives without the prior written consent of the patient or his/her lawful representative(s), except as authorized by law."  (L. Boudreau Decl., Ex.4.)

(iv) AHF Confidentiality Agreement which describes AHF's policy to "make[] every effort to respect the confidentiality of its residents and clients," and states that "it is AHF's policy not to release names or other information about any residents or clients to the public."  (L. Boudreau Decl., Ex.5.)

(v) AHF Information Technology Access Agreement, which prohibits the communication of "proprietary data, trade secrets, or other confidential information of the company" without the express authorization of AHF's General Counsel.  (L. Boudreau Decl., Ex.6.)

(vi) AHF Code of Ethics, which describes AHF employees' role in maintaining compliance and acting ethically by, among other things, "Protect[ing] the privacy and confidentiality of patient information entrusted to AHF by, at a minimum, securely maintaining the information and disclosing it only pursuant to federal and state privacy laws and accreditation standards, including HIPAA, and AHF policies and procedures," and "[a]ccess[ing] electronic patient and other sensitive or confidential information only pursuant to appropriate authorizations and privileges and on a 'need to know' basis."  (L. Boudreau Decl., Ex.7.)

3

(vii) Patient Privacy: Keeping Electronic Information Safe at AHF, which sets forth in detail AHF's requirements regarding employee handling of electronic patient information, and prohibits unauthorized access, storing, copying, and transmitting of such information. (L. Boudreau Decl., Ex.8.)

(viii) AHF Employee Handbook: Carrel received a copy of AHF's Employee Handbook and signed a receipt that acknowledged he would review the responsibilities and obligations set forth in the Handbook.  Among those duties is the prohibition against "[u]nauthorized disclosure of business 'secrets' or confidential information," and against "[m]isusing privileged information, or revealing confidential data," and against disclosure of patient lists and patient medical information.  (L. Boudreau Decl., Ex.9.)

(ix) Employee's Exit Statement Regarding Confidentiality.  Upon separation of employment from AHF on August 1,2013, Carrel signed a statement: "I recognize and agree that, even after terminating my employment at the AIDS Healthcare Foundation, I recognize that I have a continuing duty to preserve the confidentiality of agency information, pursuant to the Confidentiality Agreement I signed at the beginning of my employment and applicable law.  [¶]  Specifically, I shall continue to maintain the confidentiality of all information obtained or used in the provision of services, including, but not limited to, county records, patient records, and billings.  After my employment, I shall not release the name of any patient, or disclose information or records about any patient receiving services to any party, except as required by law."  (L. Boudreau Decl., Ex.10.)

Defendant Ferrer was formerly a Senior Program Manager, Southern Bureau of AHF from May 18, 2011 through August 22, 2012.  Ferrer signed a number of substantially similar agreements containing confidentiality provisions, and completed related training, while employed by AHF (collectively, the "Ferrer Employment Agreements"), including an "Acceptance of Employment Offer " for employment with AHF which identifies as an essential job duty and responsibility that Ferrer "[u]phold[] and ensure[] code of confidentiality relative to the clients and the testing program in accordance with AHF and HIPAA standards of care and service delivery."  (L. Boudreau Decl., Ex.11.)  Ferrer also completed HIPAA training and signed the AHF Confidentiality Policy, AHF Confidentiality Agreement, IT Access Agreement and Employee's Exit Statement Regarding Confidentiality.  (L. Boudreau Decl., Exs. 12-16.)

Defendant Loftis held the position of Grants Manager, Southern Bureau of AHF from approximately January 2, 2013 through August 16, 2013.  Loftis signed a number of substantially similar agreements containing confidentiality provisions, and completed related training, while employed by AHF (collectively, the "Loftis Employment Agreements"), including an "Acceptance of Employment Offer " for employment with AHF, HIPAA training, AHF Confidentiality Policy, AHF Confidentiality Agreement, IT Access Agreement, AHF Code of Ethics, Patient Privacy, AHF Employee Handbook, and Employee's Exit Statement Regarding Confidentiality.  (L. Boudreau Decl., Exs. 17-25.)

**B.**     The Misappropriation and Publication of AHF Confidential Information

On or about April 3, 2015, the Former Employees, by and through their attorneys Salpeter Gitkin, LLP ("Salpeter"), Theodore J. Leopold ("Leopold"), Cohen Millstein Sellers & Toll, PLLC ("Sellers & Toll") and the Kaiser Law Firm, PLLC (the "Kaiser firm") (collectively, "Relators' Counsel") filed the Amended *Qui Tam* Complaint.

The Amended *Qui Tam* Complaint attached a highly-sensitive, confidential document with AHF patient HIV test results ("the Patient List").  The Patient List is a spreadsheet generated from AHF's database of HIV-positive patients that lists more than 840 patients who were linked to medical care.  The Patient List contains around 680 unique medical record numbers, 27 telephone numbers, 2 street addresses and 37 email addresses, in whole or part, some with names included in the email address.  At the same time, and before serving AHF with a copy of the Amended *Qui Tam* Complaint, Defendants published a press release that contained a link to the Amended *Qui Tam* complaint, with the attached Patient List.  The press release  was picked up by several news outlets, including the Associated Press, CBS News and Fox News, to name a few.  The Leopold and Sellers & Toll firms published the press release, with the link to the Amended *Qui Tam* complaint and Patient List, on the Sellers & Toll firm's website.  (L. Boudreau Decl., ¶ 3.)

The Patient List is an extract from AHF's Public Health Department's Client Database, which collects demographic and other data obtained by AHF's linkage staff about individuals who tested positive through one of AHF's testing programs throughout the country or referred to AHF by a partner organization.  Access to the Database is by permission only, and only given to staff with a need to input data, provide quality assurance, run reports or perform similar tasks.  As a Director of Public Health, Carrel had access to the Client Database and/or supervised staff with access to the Database.  As Senior Program Manager, Ferrer had access to the Client Database and/or supervised staff with access to the Database.  Individuals without access to the Database cannot open the file.

**C.**     AHF's Prompt and Repeated Efforts To Stop Defendants' Unauthorized
Possession and Disclosure of AHF's Confidential Documents and Patient
Information

Under HIPAA, anyone who discloses individually identifiable health information to

another person without authorization to do so, regardless of how he or she obtained the

information, faces criminal liability and monetary sanctions.  42 U.S.C. § 1320d-6.  A covered

entity under HIPAA, such as AHF, has an obligation to "mitigate, to the extent practicable, any

harmful effect" it learns was caused by the use or disclosure of protected health information by

its employees in violation of its privacy policies and procedures or the HIPAA Privacy Rule.  45

C.F.R. § 164.530(f).  Accordingly, following the unsealing of the Amended *Qui Tam* Complaint,

on April 13, 2015, AHF wrote Relators' Counsel to demand removal of the Patient List from the

public domain and return it and any other misappropriated documents.  (L. Boudreau Decl., Ex.

26.)  On or about April 14, 2015, the Former Employees filed a motion to withdraw certain

portions of their Amended Complaint, which the district court granted on April 16,2015.

Relators' Counsel appear to have since removed the attachments to the Amended *Qui Tam*

complaint (including the Patient List), although the complaint is still linked in their press release

on the Sellers & Toll  website.  (L. Boudreau Decl., Ex. 27.)

On April 16 and 17, 2015, AHF counsel spoke to Leopold about the need to return the

Patient List and all other confidential documents pursuant to HIPAA and Florida law.  However,

despite that conversation, no documents were returned, prompting AHF to write Relators'

Counsel on April 20, 2015 repeating its request for information about the extent to which the

Patient List may have been accessed by third parties in the interim time period before the links to

the Patient List were taken down, and steps taken by Defendants to secure all copies.  (L.

Boudreau Decl., Ex. 28.)  AHF again demanded return of the Patient List, all underlying

documents from which it was derived, and any other documents with individually identifiable

information about any AHF patient or recipient of an HIV test.  AHF required a response to its

letter by April 22nd.  To date, Defendants have not responded to the April 20, 2015 letter nor

returned any documents, including the Patient List.

On May 4, 2015, counsel sent a letter to Relators' Counsel in a final effort to meet and

confer on this issue and seek the return of its confidential information, as well as information

concerning the extent to which the Patient List was accessed by third parties and any steps

Relators' Counsel or the Former Employees may have taken to secure the Patient List and any

other confidential AHF documents in their possession.  (L. Boudreau Decl., Ex. 29.)  Defendants

have not responded to that letter.

**D.**     Procedural Posture

AHF filed the instant case on April 24, 2015, and it was assigned to this Court on May 1,

2015.  The Court has not yet ordered a scheduling conference pursuant to Fed. R. Civ. Proc. §

16(b).  Accordingly, AHF brings this motion for expedited discovery based upon the immediate

and significant risk of harm to AHF and its patients stemming from Defendants' ongoing

possession and use of the Patient List and other confidential information.

## III.    ARGUMENT

"Litigants must know that the courts are not open to persons who would seek justice by

fraudulent means."  *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995).  Disgruntled

employees are not authorized to pilfer a "wheelbarrow full of an employer's proprietary

documents in violation of their [employment and/or confidentiality agreements] merely because

it might help them blow the whistle on an employer's violations of law, real or imagined."  *JDS

Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 702 (E.D. Va. 2007).  Yet that is exactly what

happened here: One or more of the Former Employees accessed (or else caused staff to access on

their behalf) a restricted database from which they acquired the Patient List, a highly confidential document that contains identifiable information about AHF patients and their HIV status, and most likely other confidential documents as well. At a minimum, the Former Employees are holding confidential information, including HIV test information, without authorization and refusing to return it, and in fact, using it for personal advantage – all of which is unlawful under HIPAA and state law, regardless of how the Former Employees originally may have come into possession of the confidential information. Fla. Stat. § 381.004(5); 45 U.S.C. § 1320d-6.

The fact that the Patient List is a confidential and highly-sensitive document should be obvious to *anyone*, especially the Former Employees, with their extensive experience in the field and signed Employment Agreements acknowledging the confidential nature of AHF patient health information and the contractual and legal prohibitions against unauthorized disclosure. Nevertheless, Defendants published the Patient List by including the List as an attachment to the Amended *Qui Tam* complaint, which they linked in a press release that appears to have provided access to the List to any reader of the press release who clicked on the link. Defendants then published the press release on the internet as part of a media blitz trumpeting the *Qui Tam* action.

HIPAA imposes on AHF the statutory obligation to attempt to mitigate the harm caused by Defendants' unauthorized possession and disclosure of confidential AHF patient information. Accordingly, AHF has repeatedly requested that Defendants return the Patient List and all other confidential documents. AHF also has asked Defendants to provide information about the extent of their disclosure of confidential AHF information to third parties and any safeguards currently in place to prevent further unauthorized disclosure. Defendants' silence in the face of these repeated requests by AHF has stymied AHF's ability to fulfill its duties under HIPAA. It also suggests that the Patient List may be merely the tip of the iceberg in terms of the scope of the

Former Employees' misappropriation of AHF documents and, indeed, it is likely that Defendants possess substantial additional confidential information including the data underlying the Patient List.  Given the highly-sensitive nature of the documents and information currently hanging in limbo, AHF respectfully requests that the Court issue an order granting AHF expedited discovery on the topic of Defendants' misappropriation, possession and disclosure of AHF's confidential documents and patient information so that AHF may promptly assess what further remedial measures are necessary to address the harm Defendants have caused AHF and its patients.

A.   Expedited Discovery is Necessary to Assess The Extent of the Former Employees' Malfeasance, Identify Possible Remedial Measures to Mitigate Future Harm, and Determine Appropriate Remedies and Sanctions

Given that Defendants were able to exploit the Patient List notwithstanding the highly-sensitive nature of the information and the secured manner in which it is maintained by AHF, and that they have responded to AHF's numerous attempts to ascertain the full scope of the Former Employees' self-help discovery efforts with silence, AHF believes Defendants have likely obtained additional highly-sensitive and confidential AHF documents.  AHF therefore seeks an order permitting expedited discovery so that it may discern the full extent of the Former Employees' malfeasance and determine what, if any, remedial measures must be taken to protect AHF and its patients from future harm, as well as to determine what sanctions or other remedies are appropriate given Defendants' conduct here.

1.   **Good Cause Exists for the Court to Grant Expedited Discovery**

Courts have adopted a good cause or reasonableness standard for granting expedited discovery.  *Dell Inc. v. Belgiumdomains, LLC*, No. 07-22674, 2007 WL 6862341, at *7 (S.D. Fla. Nov. 21, 2007); *Burns v. City of Alexander City, et al.*, No. 2:14-cv-350-MEF, 2014 WL 2440981, at *1 (M.D. Ala. May 30, 2014) ("A party seeking discovery prior to a Rule 26(f) planning conference by means of a court order must show good cause.") (internal citations and

10

quotations omitted); *see also Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."); *Tracfone Wireless, Inc., v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (accord). "Courts generally find good cause in cases in which there is potential spoliation of evidence, the plaintiff seeks a preliminary injunction, or in which unique circumstances exist that require immediate, limited discovery." *City of Alexander City*, 2014 WL 2440981, at *1.

Expedited discovery is particularly appropriate where, as here, factual inquiries can be made in an effort to mitigate or avoid any additional irreparable harm to AHF or its patients caused by Defendants' conduct. *See Adams*, 304 F.R.D. at 673. Currently, the Patient List is in the hands of unknown numbers of third parties, as well as in the hands of the Former Employees and their Counsel. There is no assurance that the Patient List, in all its versions (paper and electronic) is secured to HIPAA and state standards. Moreover, none of the Defendants are covered entities with statutory duties under HIPAA and state patient record confidentiality laws to continue to maintain the confidentiality of the Patient List over time. Finally, only Defendants know what additional HIPAA-protected and other confidential information they took from AHF. In light of the continuing threat of harm to AHF and its patients while the Patient List and other confidential documents are held by Defendants and unknown third parties, and AHF's duty to ensure that these documents and information are secured to HIPAA standards, AHF has a compelling interest in determining the full scope of the Former Employees' self-help discovery and any additional unauthorized disclosure or use of information obtained as a result.

"Regardless of whether some of the documents may be ultimately discoverable, [companies have], and have always had, the right to keep their own documents until met with

proper discovery requests or ordered to disclose them by the Court." *Conn v. Sup. Ct.*, 196 Cal. App. 3d 774, 781 (1987); *see also Fischbach Corp.*, 1998 WL 470497, at * 7 ("Company documents are company property, and where an employee takes them to benefit himself, he breaches his duty of loyalty."); *Hodgson v. Texaco Inc.*, 440 F.2d 662, 663 (5th Cir. 1971) ("An employee's appropriation of records without permission for purposes of using them in a suit against a company is not protected."). Rather than engage in self-help discovery, the "legitimate remedy" is to seek the documents through standard discovery channels. *Hodgson*, 440 F.2d at 663; *see also JDS Uniphase Corp*, 473 F. Supp. 2d at 704 ("an employee, even if aggrieved, should not engage in self-help by wrongfully retaining an employer's documents; but instead the employee should file suit and seek the documents via subpoena."); *Cabotage*, 2012 WL 3064116 at *4 (precluding plaintiff's use of company documents containing patient information protected by HIPAA and instructing plaintiff to seek them through the court's discovery process, so that the company would have the opportunity to seek a protective order).

The prejudice to Defendants of being deprived of confidential, highly-sensitive information that they have no right to possess in the first place is nil. By contrast, AHF's patients' right to confidentiality is great, as is AHF's interest in protecting its patients and complying with its statutory obligations. *See*, *e.g.*, *Cabotage*, 2012 WL 3064116, at *4 (holding that non-party patients' right to confidentiality outweighed plaintiff's proffered justification for accessing their medical records to use in litigation against former employer and precluding plaintiff from any use of the documents); *see also United States ex rel. John Rector, et al., v. Bon Secours Richmond Health Corp., et al.*, No. 3:11-CV-38, 2014 WL 66714, at *6 (E.D. Va. Jan. 6, 2014) (noting that the FCA does not grant whistleblowers "carte blanche" to acquire information "in any way they deem necessary," and finding defendants were likely to be prejudiced by

plaintiff's self-help discovery where plaintiff possessed " data and documents that may contain information not reachable through the discovery process," including information protected by HIPAA).  AHF therefore respectfully requests that the Court issue an order permitting (i) expedited depositions of the Former Employees and (ii) written discovery limited to questions concerning Defendants' self-help discovery, such as the scope and identification of all confidential information taken from AHF, how it was obtained, where and to whom it has been disseminated, and current safeguards to prevent future disclosure.  Copies of proposed deposition notices for the Former Employees and the requests for production of documents appear as Attachments A and B to this motion.

> **2.**     **Information Developed Through Expedited Discovery Is Necessary to Determine What Relief AHF is Entitled to and What Sanctions are Appropriate**

This expedited discovery will also aid AHF and the Court in determining what sanctions may be warranted in the event AHF is required to file a motion seeking either a preliminary injunction or temporary restraining order prohibiting Defendant's further unauthorized use of this information and requiring its return.

Federal district courts "possess the inherent power to regulate litigation and to sanction litigants for abusive practices," *Peltz*, 901 F. Supp. at 1579, and have exercised this power to severely sanction litigants and/or their attorneys for engaging in bad faith behavior even before litigation commenced.  *In re Katrina Canal Breaches Consolidated Litig.*, No. 05-4182, 2008 WL 4401970 (E.D. La. Sept. 22, 2008).  Where, as here, a former employee steals confidential company documents and then attempts to use them in litigation against their former employer, Courts routinely order the return of the documents and preclude their use in the litigation, among other sanctions.  *See, e.g., Appel v. Fischbach Corp.*, No. 93-CV-5146(FB), 1998 WL 470497, at * 7 (E.D.N.Y. Aug. 10, 1998) ("Where an employee has taken company documents for the

purpose of preparing for anticipated litigation, the remedy has been dismissal of the employee's complaint or an order that the employee return those documents"); *Cabotage v. Ohio Hospital for Psychiatry, LLC,* No. 2:11-cv-50, 2012 WL 3064116, at *4 (S.D. Ohio Jul. 27, 2012) (where plaintiff took documents from former employer which contained confidential patient information protected by HIPAA and thereafter sought to use the documents in a False Claims Act action against former employer, court held that non-party patients' right to confidentiality outweighed plaintiff's proffered justification for accessing their medical records and precluded plaintiff from any use of the documents); *Smith v. Armour Pharm. Co*., 838 F. Supp. 1573, 1578 (S.D. Fla. 1993) (exercising inherent authority to "limit the use of documents obtained by means other than that court's discovery process" to preclude plaintiff from even mentioning a contested document again); *Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279 (Cal. Ct. App. 1997) ("The least sanction cognizable in these circumstances" is for the Court to issue an order compelling Defendants to return the documents to the company); *Zahodnick v. IBM Corp*., 135 F.3d 911 (4th Cir. 1997) (whistleblower plaintiff in *Qui Tam* action alleging former employer mischarged government ordered to return all confidential materials to employer).

In *Zahodnick*, plaintiff, a former employee, brought a *qui tam* action against his former employer alleging violations of the False Claims Act based on the company's alleged mischarging of the government.  Notwithstanding the fact that plaintiff had signed two confidentiality agreements while employed, he retained confidential materials belonging to the company after termination of his employment and forwarded those documents to his counsel. *Zahodnick*, 135 F.3d at 915.  On appeal, the Court affirmed the district court's order enjoining plaintiff from disclosing the company's confidential materials to this parties and ordering plaintiff to return all confidential materials to the company.  *Id*.

In this case, the Former Employees' conduct is even more egregious than in *Zahodnick*, in light of the particularly sensitive nature of the confidential information at issue (i.e., the identities and HIV-positive status of AHF patients) and the fact that Defendants published the information to the public at-large by filing it with the unsealed Amended *Qui Tam* complaint and then making the complaint available through a link on a widely trumpeted press release, all in violation of Florida Law and HIPAA.  *See, e.g.*, Fla. Stat. § 381.004; 42 U.S.C. § 1320d-6.  As a result, any downloaded copies are now outside the control of the court, the Former Employees or Relators' Counsel and pose a continuing threat of harm to AHF and its patients.  On these facts, AHF believes should be entitled to injunctive relief and an order compelling the return of the confidential documents and information.  Therefore, AHF respectfully requests that the Court grant expedited discovery for the additional reason that it will permit AHF to further develop the factual record concerning the Former Employees' self-help discovery tactics and Defendants' possession and use of the confidential information and thereby determine what remedies and sanctions to seek in a forthcoming motion for injunctive relief.

## IV.    CONCLUSION

In light of the foregoing, AHF respectfully requests that the Court issue an order permitting expedited discovery concerning the Former Employees' misappropriation and Defendants' unauthorized possession and use of AHF's confidential documents and highly-sensitive patient information.

## V.    REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), AHF hereby requests that the Court grant a hearing where the parties may present oral argument on this motion.  Such argument should not exceed 15 minutes per side.  AHF believes oral argument would be helpful to the Court in light of the

highly-sensitive and confidential documents and patient health information at issue here, and to clarify the factual background and the scope of the expedited discovery necessary here.

## VI.     CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

On May 4, 2015, counsel for AHF sent a letter to Relators' Counsel in a good faith and final effort to informally resolve the issues raised in this motion.  Relators' Counsel have not responded to that letter or AHF's attempts to meet and confer.  AHF has therefore been unable to resolve these issues without the intervention of the Court.


DATED:  May 9, 2015

Jeffrey A. Neiman - Bar No. 544469
   jneiman@mnrlawfirm.com
Jeffrey E. Marcus – Bar No. 310890
   jmarcus@mnrlawfirm.com
MARCUS NEIMAN & RASHBAUM LLP
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida  33394
Tel:  (954) 462-1200
Fax:  (954) 688-2492

Mitchell A. Kamin – CA State Bar No. 202788
Paul S. Chan – CA State Bar No. 183406
Marc E. Masters – CA State Bar No. 208375
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110


By:     /s/ Jeffrey E. Marcus
_____
        Jeffrey E. Marcus
        Attorneys for Plaintiff AIDS Healthcare
        Foundation, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion for expedited discovery was served via CM/ECF and email on May 9, 2015, on all counsel or parties of record on the Service List below.

 /s/ Jeffrey E. Marcus

Jeffrey E. Marcus

## SERVICE LIST

Jeffrey A. Neiman
Marcus Neiman & Rashbaum LLP
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, FL  33394
Telephone: (954) 462-1200
Facsimile: (954) 688-2492
Email: jneiman@mnrlawfirm.com
**Counsel for Plaintiff AIDS Healthcare
Foundation, Inc.**

Mitchell A. Kamin
Paul S. Chan
Marc E. Masters.
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
**Counsel for Plaintiff AIDS Healthcare
Foundation, Inc.**

Mauricio Ferrer
1351 S.W. 32 Street
Ft. Lauderdale, FL  33315
*Defendant*

Theodore J. Leopold, Esq.
c/o Cohen Milstein Seller & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach, FL  33410
Telephone: (877) 515-7955
*Defendant*

Jack Carrel
4550 North Boulevard
Suite 250
Baton Rouge, LA 70806
*Defendant*

Cohen Milstein Seller & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach, FL  33410
Telephone:  (877) 515-7955
Facsimile:   (561) 515-1401
*Defendant*

Salpeter Gitkin, LLP
One East Broward Boulevard, Suite 1500
Ft. Lauderdale, FL 33301
Telephone: (954) 467-8622
Facsimile:  (954) 467-8623
*Defendant*

Kaiser Law Firm, PLLC
926 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 570-3071
*Defendant*